**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

| | |
|---|---|
| JULIAN VALIENTE, and SOUTH DAYTONA PROFESSIONAL FIREFIGHTERS, IAFF LOCAL 3193, | ) ) ) ) ) ) |
| | ) |
| Plaintiffs, | ) |
| v. | ) |
| | ) |
| CITY OF SOUTH DAYTONA, FLORIDA, and JAMES L. GILLIS JR., in his individual capacity, and JOHN BRANT, in his individual capacity. | ) ) ) ) ) |
| | ) |
| Defendants. | ) |

CIVIL ACTION NO:

COMPLAINT

PERMANENT INJUNCTIVE
RELIEF REQUESTED

DECLARATORY RELIEF
REQUESTED

DEMAND FOR A JURY TRIAL

## NATURE OF THE ACTION

This action is filed pursuant to 42 U.S.C. § 1983 to correct unlawful practices by Defendants for violating Plaintiffs' rights and privileges secured by the First and Fourteenth Amendments of the U.S. Constitution and to provide appropriate relief to Plaintiffs, South Daytona Professional Firefighters, IAFF Local 3193, and Julian Valiente, who were adversely affected by such practices. Plaintiff Julian Valiente alleges that Defendants violated the First and Fourteenth Amendments by retaliating against him for exercising his rights to free speech and free association. Plaintiff South

Daytona Professional Firefighters, IAFF Local 3193 alleges on behalf of itself and its members that Defendants violated its First and Fourteenth Amendment rights to free speech and free association, and Defendants enacted an unlawful prior restraint by unilaterally implementing a policy, custom, rule, and/or order that restricted their First and Fourteenth Amendment rights to free speech by requiring a decision maker to preapprove any potential communications with elected officials based on the content of the proposed communications.

## JURISDICTION AND VENUE

1.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, 1343, 1988, and 2201-02.

2.     This action is authorized and instituted pursuant to 42 U.S.C 1983.

3.     The practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Middle District of Florida.

## PARTIES

4.     Plaintiff Julian Valiente is an individual who resides in South Deltona, Florida. Mr. Valiente worked as a firefighter, as that term is defined by § 112.81, Florida Statues, for the South Daytona Fire Department and City

of South Daytona. Mr. Valiente is a "citizen of the United States" within the meaning of 42 U.S.C. § 1983 and a "person" within the meaning of 42 U.S.C. § 1983.

5.     Plaintiff South Daytona Professional Firefighters, IAFF Local 3193 ("Local 3193") is a labor organization within the meaning of § 447.02(1), Florida Statutes, and the exclusive bargaining representative of certain classifications of firefighters within the South Daytona Fire Department. Local 3193 is also a person within the meaning of 42 U.S.C § 1983.

6.     Defendant City of South Daytona, Florida ("City") is a municipality incorporated and established under the laws of Florida and located within Volusia County, Florida. The City is a person within the meaning of 42 U.S.C. § 1983.

7.     Defendant James L. Gillis Jr. is the City Manager for the City of South Daytona, Florida. As City Manager, Gillis is the chief administrative officer of the City and is responsible to the City Council for the proper administration of all affairs of the City. Pursuant to the City Charter, neither the Mayor nor the City Council can interfere with City Manager Gillis' power to terminate a City employee's employment.

Mr. Gillis is a person within the meaning of 42 U.S.C. § 1983. City Manager Gillis is a resident of the state of Florida.

8.     Defendant John Brant was Fire Chief of the South Daytona Fire Department and an employee of the City of South Daytona, Florida. Fire Chief Brant was appointed by the City Manager and is a person within the meaning of 42 U.S.C. § 1983. Fire Chief Brant is a resident of the state of Florida.

### STATEMENT OF CLAIMS

9.     At all relevant times, Local 3193 and the City were parties to a Collective Bargaining Agreement ("CBA") that established the terms and conditions of employment for certain classifications of firefighters for the South Daytona Fire Department.

10.     Among the classifications covered by the CBA was the position of firefighter/paramedic.

11.     Certain members of the South Daytona Fire Department were covered by the CBA and were in the exclusive bargaining unit represented by Local 3193. At all material times, approximately twelve (12) firefighter personnel were represented by Local 3193.

12.     On or about February 18, 2025, the City hired Mr. Valiente as a firefighter/paramedic in the South Daytona Fire Department.

13.     Prior to being hired by the City, Mr. Valiente had over ten years of experience as a firefighter with the fire department of Lake County, Florida.

14.     Pursuant to Article 13 of the CBA, Mr. Valiente had to serve a

probationary period of twelve (12) months, during which his employment could be terminated with or without cause, without access to the grievance procedure.

15.     In or around July 2025, Mr. Valiente was elected President of Local 3193.

16.     On or about August 12, 2025, Mr. Valiente was issued a performance review where he received a composite score of fourteen (14) out of fifteen (15) total points. Mr. Valiente received the highest rating of "Exceeds Expectations" in four of the five performance categories and the next highest rating of "Meets Expectations" in the remaining category.

17.     Mr. Valiente's performance review stated:

"Julian is halfway through his probationary period and continues to exceed expectations in most performance categories. He is highly dependable, demonstrates strong knowledge in his role as Firefighter/Paramedic, and consistently shows dedication to the position. Julian maintains a positive attitude, actively seeks ways to improve the department, and offers constructive methods to achieve those improvements."

18.     Fire Chief Brant signed the August 12, 2025, performance review.

19.     On or about October 2, 2025, Fire Chief Brant informed Mr. Valiente of an opportunity for Local 3193 to volunteer with the City by helping to staff the concession stand of a City recreation league baseball game.

20.     Fire Chief Brant suggested that Mr. Valiente contact Councilman

Doug Quartier to arrange the Union's involvement. Chief Brant provided Mr. Valiente with Councilman Quartier's phone number.

21. Several days later, Mr. Valiente texted Councilman Quartier, who invited him to the City's "National Night Out Against Crime Parade" to discuss the volunteer opportunity.

22. On or about October 7, 2025, Mr. Valiente attended a reception prior to the "National Night Out Against Crime Parade."

23. At that reception, Mr. Valiente engaged in an approximately twenty-minute conversation with Councilman Quartier during which he introduced himself as President of Local 3193 and volunteered members of Local 3193 to help staff the City's recreation league baseball game.

24. Mr. Valiente also invited Councilman Quartier to participate in charity events being organized by Local 3193, such as a chili-cook-off to raise money for a community food pantry that faced a significant budget shortfall.

25. Mr. Valiente wore his IAFF polo shirt and civilian clothes, was off-duty, and was not performing any official job duties at the reception.

26. Before leaving the reception, Mr. Valiente introduced himself to and/or exchanged pleasantries with City of South Daytona Mayor William C. "Bill" Hall, City Manager Gillis, and Department Battalion Chief Don Howard.

27. The next day, Fire Chief Brant summoned Mr. Valiente and the

Local 3193 Vice President to his office. There, Fire Chief Brant ordered Local 3193 and all firefighters represented by Local 3193 to cease all union activities, prohibited them from speaking to any of the City's elected officials, prohibited them from attending any public or private gathering where the City's elected officials might also be in attendance, and banned them from hosting or organizing any Local 3193 events without explicit approval from Fire Chief Brant and/or the head of the fire department.

28.     Fire Chief Brant explained that he had been instructed by one of his superiors to issue these orders and implement this policy.

29.     Upon information and belief, Fire Chief Brant's orders came at the behest of, or with knowledge of, City Manager Gillis and the City. The orders and policy remains in effect.

30.     On October 10, 2025, Local 1393's attorney sent City Manager Gillis a letter explaining that Fire Chief Brant's orders were unlawful and violated the U.S. Constitution.

31.     City Manager Gillis did not respond to the October 10, 2025, letter.

32.     Thereafter, Chief Brant took a short vacation of approximately two weeks or less.

33.     On or about October 23, 2025, Fire Chief Brant's first day back at work from vacation, he terminated Mr. Valiente's employment without

7

explanation.

34. Mr. Valiente's Personnel Action Form only stated: "Did not successfully pass probation."

35. Mr. Valiente's Personnel Action Form was signed by City Manager Gillis and Fire Chief Brant.

36. Mr. Valiente asked Fire Chief Brant and the HR Director why he was being terminated. Fire Chief Brant would not speak about it, and the HR Director only would reiterate that Mr. Valiente did not "successfully pass probation."

37. Neither City Manager Gillis, Fire Chief Brant, nor anyone for the City ever gave Mr. Valiente a reason why Mr. Valiente did not "successfully pass probation."

38. Defendant's decision to terminate Mr. Valiente's employment was because of, motivated by, and/or substantially motivated by Mr. Valiente's decision(s) to exercise his First and Fourteenth Amendment rights to speak as a private citizen with elected officials on matters of public concern and associate with Local 3193.

39. Neither Fire Chief Brant, City Manager Gillis, nor the City would have terminated Mr. Valiente's employment with the City if he had not exercised his First and Fourteenth Amendment rights to speak as a private

8

citizen with elected officials on matters of public concern and/or associated with Local 3193 as a private citizen.

40.    Mr. Valiente's termination was the third time in less than two years that a Local 3193 President who worked for the City was disciplined or threatened with discipline.

41.    In 2024, the Local 3193 President complained of harassment and a hostile work environment, at least in part, because of her status and activities as the Local 3193 President. In or around October 2024, she was disciplined by Chief Brant at the direction of the City Manager and/or City for participating in a charity event after being given express permission by Chief Brant to participate in that same event. She eventually resigned and has since been named "Recruit of the Year" for a neighboring fire department.

42.    In June 2025, Chief Brant summoned the previous Local 3193 President, chastised him, and threatened to discipline and/or terminate his employment for holding internal union discussions about a potential merger with a neighboring IAFF local union. Chief Brant then unilaterally issued a new work rule and policy—violation of which was subject to discipline— prohibiting firefighters and IAFF 3193 members on the Local 3193 President's shift from congregating. That Local 3193 President has since resigned to work at a neighboring fire department.

43. As a result of these events, which adversely affected three Local 3193 Presidents in two years, Local 3193 firefighters who work for the City fear retaliation for participating in union activities, holding an official position with Local 3193, and participating in activities protected by the First and Fourteenth Amendments.

44. The actions of Fire Chief Brant, City Manager Gillis, and the City caused and continue to cause firefighters and Local 3193 members to fear and abstain from of holding any type of leadership position with Local 3193, otherwise being associated with Local 3193's activities protected by the First and Fourteenth Amendment, and from exercising their First and Fourteenth Amendment rights to speak as private citizens on matters of public concern.

45. Mr. Valiente continues to serve as Local 3193 President despite no longer working for South Daytona Fire Department or City.

## COUNT 1:
### 42 U.S.C. § 1983 - Violation of Mr. Valiente's First and Fourteenth Amendment to Free Speech

*(Mr. Valiente v. All Defendants)*

46. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 45 above.

47. The right of Mr. Valiente to speak freely about matters of public concern is protected by the First and Fourteenth Amendments of the U.S.

Constitution. The public has a vital interest in free and open discussion of charitable events that benefit the community.

48.    It is a violation of the First and Fourteenth Amendments for public employers, including the City, City Manager Gillis, and Fire Chief Brant, to discriminate against, discipline, or discharge their employees in retaliation for engaging in speech about matters of public concern as private citizens and not pursuant to their official duties.

49.    Mr. Valiente's speech addressed matters of public concern, including fundraising for local charities and volunteer efforts on behalf of those charities.

50.    Mr. Valiente engaged in speech as a private citizen and outside his official duties when attending a community reception and parade, where elected officials were present.

51.    Mr. Valiente, acting as a private citizen, engaged in free speech about matters of public concern, including discussing volunteer efforts of Local 3193, encouraging elected officials to participate in the fundraising efforts of Local 3193 on behalf of local charities, including a local food pantry.

52.    Mr. Valiente encouraged the elected officials to participate in the fundraising efforts of Local 1393 because he believed that their participation would help the charities raise additional funds.

53.   Defendants knew of Mr. Valiente's protected speech through personal observation of him at the off-duty reception and/or through conversations with elected officials.

54.   Defendants, acting individually and/or jointly, retaliated against, discriminated against, and terminated Mr. Valiente because he engaged in free speech about matters of public concern, including organizing support for charity events and volunteer efforts to help the community.

55.   Defendants instituted an order, policy, and/or rule through a directive forbidding Mr. Valiente or any firefighter employed by the City from exercising their First and Fourteenth Amendment Right of free speech as private citizens on matters of public concern.

56.   Despite Mr. Valiente's strong performance evaluation, Defendants terminated Mr. Valiente's employment.

57.   Defendants' actions unlawfully chilled and continue to chill free and open discussion on issues important to the community and intimidates, coerces, and restrains other public employees and persons from similarly engaging in protected speech.

58.   The retaliation against and discharge of Mr. Valiente was initiated pursuant to a longstanding and ongoing custom and practice of retaliating against Local 3193 members, Local 3193 elected officials, and firefighters who

exercised or sought to exercise their First and Fourteenth Amendment rights as private citizens on matters of public concern.

59. The actions by Defendants were done in a knowing, willful, wanton, reckless, and bad faith manner, which violated clearly established constitutional provisions and rights that a reasonable person would have known.

60. Defendants' actions were done with malice and reckless indifference to federally protected rights.

61. As a direct, foreseeable, and proximate result of Defendants' unlawful conduct and actions, Mr. Valiente suffered actual damages, including, but not limited to, humiliation, emotional distress, and loss of enjoyment of life.

62. Defendants are liable for Mr. Valiente's injuries resulting from Defendants retaliating against him and terminating him in violation of his First and Fourteenth Amendments.

63. Defendants are also liable for Plaintiffs' reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT 2:
### 42 U.S.C. § 1983 - Violation of Mr. Valiente's First and Fourteenth Amendment to Free Association

*(Mr. Valiente v. All Defendants)*

13

64. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 45 above.

65. The right of Mr. Valiente to freely associate with a labor organization such as Local 3193 is protected by the First and Fourteenth Amendments of the U.S. Constitution.

66. The right of Mr. Valiente to associate with a union and advocate for matters through his union as a private citizen is protected by the First and Fourteenth Amendments of the U.S. Constitution. The public has a vital interest in such free association.

67. It is a violation of the First and Fourteenth Amendments for public employers, including the City, to discriminate against, discipline, or discharge employees for exercising such rights to free association, including the right to freely associate with a labor union or advocate for matters of public concern through their union.

68. Mr. Valiente's associational activity addressed whether the council members would participate in Local 3193's charitable events to increase fundraising for the charities as well as volunteer efforts of Local 3193 on behalf of those charities.

69. At all relevant times, Mr. Valiente was President of Local 3193 and an employee of the South Daytona Fire Department and the City of South

Daytona.

70. Mr. Valiente actively participated in and supported the Union's associational activities including the volunteer efforts of Local 3193 on behalf of charities and attempting to get City officials to become actively involved in supporting those charitable efforts, which are protected by the First and Fourteenth Amendments of the U.S. Constitution.

71. At all relevant times, Defendants were aware of Mr. Valiente's association with Local 3193 and activities on behalf of Local 3193.

72. Defendants instituted an order, policy, and/or rule through directive forbidding Mr. Valiente or any firefighter employed by the City from exercising their First and Fourteenth Amendment Right to free association as private citizens.

73. Defendants, acting individually and/or jointly, retaliated against, discriminated against, and terminated Mr. Valiente's employment because of his association with Local 3193 and because he engaged in union activities that are protected by the First and Fourteenth Amendments' Right to free association.

74. Defendants' actions unlawfully chilled and continue to chill firefighters' right to engage in their First and Fourteenth Amendment rights to free association and intimidates, coerces, and restrains other public

15

employees and persons from similarly engaging in their First and Fourteenth Amendment rights to free association.

75. The retaliation against and discharge of Mr. Valiente was initiated pursuant to a longstanding and ongoing custom and practice of retaliating against Local 3193 members, Local 3193 elected officials, and firefighters who work for the City who sought or seek to exercise their First and Fourteenth Amendment rights to engage in free association.

76. The actions by Defendants were done in a knowing, willful, wanton, reckless, and bad faith manner, which violated clearly established constitutional provisions and rights that a reasonable person would have known.

77. Defendants' actions were done with malice and reckless indifference to federally protected rights.

78. As a direct, foreseeable, and proximate result of Defendants' unlawful conduct and actions, Mr. Valiente suffered actual damages, including, but not limited to, humiliation, emotional distress, and loss of enjoyment of life.

79. Defendants are liable for Mr. Valiente's injuries resulting from Defendants retaliating against him and terminating him in violation of his First and Fourteenth Amendments.

80.    Defendants are also liable for Plaintiffs' reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

**COUNT 3:**
**42 U.S.C. § 1983 – Violation of Local 3193's First and Fourteenth Amendment Right of Free Speech**

*(Local 3193, individually and on behalf of its members v. the City of South Daytona)*

81.    Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 45 above.

82.    Local 3193 and its members' right to speak freely as private citizens on matters of public concern is protected by the First and Fourteenth Amendments of the U.S. Constitution. The public has a vital interest in Local 3193's and its members' right to speak freely, as an association and as private citizens, on matters of public concern, including charitable events that benefit the community.

83.    It is a violation of the First and Fourteenth Amendments for public employers, including the City, City Manager Gillis, and Fire Chief Brant, to discriminate against, discipline, or discharge employees or otherwise restrain public employees in retaliation for engaging in speech and advocacy about matters of public concern as private citizens or as union members, while off-duty.

17

84.     Defendants violated the law by instituting an order, policy, and/or rule through a directive forbidding Local 3193 and its members from exercising their First and Fourteenth Amendment Right of free speech as private citizens on matters of public concern while off duty.

85.     Such action was initiated by Chief Brant pursuant to the City and City Manager Gillis' direction to limit the Union and its members' First and Fourteenth Amendment rights.

86.     Such conduct by Defendants was done in a knowing, willful, wanton, reckless, and bad faith manner, which violates clearly established constitutional provisions and rights which a reasonable person would have known.

87.     As a direct, foreseeable, and proximate result of Defendants' unlawful conduct, the members of IAFF Local 3193 have suffered, and continue to suffer, loss and deterrence of speech rights, loss of membership participation, suppression of participation in protected union speech, and other irreparable harm to their constitutional rights.

88.     Local 3193 members would have standing to sue for this violation in their own right because Defendants' policy and conduct have chilled and deterred their First and Fourteenth Amendment rights to free speech as private citizens on matters of public concern while off duty.

18

89. As a labor union, protecting members' ability to speak as Local 3193 members is central to Local 3193's purpose. Thus, Local 3193's interests in eliminating and redressing Defendants' conduct which harms members' First and Fourteenth Amendment free speech rights are germane to those organizational purposes.

90. Defendants' policy and conduct infringe on Local 3193's members' free speech rights in an identical manner, subjecting all members and prospective members to the same prior-approval requirement.

91. This claim seeks declaratory and injunctive relief and does not require individual members' participation to adjudicate liability or remedy the constitutional violation.

92. Under 42 U.S.C. § 1983, "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

93. Defendants are liable for injuries resulting from Defendants' interference with and retaliation against protected free speech rights.

19

94.     Defendants are also liable for Local 3193's reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT 4:
## 42 U.S.C. § 1983 – Violation of Local 3193's First and Fourteenth Amendment of Free Association

*(Local 3193, individually and on behalf of
its members v. the City of South Daytona)*

95.     Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 45 above.

96.     Local 3193 and its members' right to associate with Local 3193 as private citizens is protected by the First and Fourteenth Amendments of the U.S. Constitution.

97.     It is a violation of the First and Fourteenth Amendments for public employers, including the City, City Manager Gillis, and Fire Chief Brant, to discriminate against, discipline, or discharge employees, or otherwise restrain public employees, in retaliation for engaging in or associating with Local 3193, as private citizens.

98.     Defendants violated the law by instituting an order, policy, and/or rule forbidding Local 3193 and its members from exercising their First and Fourteenth Amendment right of free association.

99.     Such action was initiated by Chief Brant pursuant to the City and

20

City Manager Gillis's direction to limit the Union and its members' First and Fourteenth Amendment rights.

100. Such conduct by Defendants was done in a knowing, willful, wanton, reckless, and bad faith manner, which violates clearly established constitutional provisions and rights of which a reasonable person would have known.

101. As a direct, foreseeable, and proximate result of Defendants' unlawful conduct, the members of IAFF Local 3193 have suffered, and continue to suffer, loss and deterrence of associational opportunities, loss of membership participation, suppression of participation in protected union activity, and other irreparable harm to their constitutional rights.

102. Local 3193 members would have standing to sue for this violation in their own right because Defendants' policy and conduct have chilled and deterred their First and Fourteenth Amendment rights to free association as private citizens on matters of public concern while off duty.

103. As a labor union, collective action to benefit its members is central to Local 3193's purpose. Thus, Local 3193's interests in eliminating and redressing Defendants' conduct that restricts members' First and Fourteenth Amendment rights to free association are germane to those organizational purposes.

104. Defendants' policy and conduct infringe on Local 3193's members' associational rights in an identical manner, subjecting all members and prospective members to the same prior approval requirement.

105. This claim seeks declaratory and injunctive relief and does require individual members' participation to adjudicate liability or remedy the constitutional violation.

106. Under 42 U.S.C. § 1983, "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

107. Defendants are liable for injuries resulting from Defendants' interference with and retaliation against Local 3193 and its members protected associational rights.

108. Defendants are also liable for Local 3193's reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT 5:
## 42 U.S.C. § 1983 – Declaratory Judgment for Violation of First and Fourteenth Amendment for a Prior Restraint

*(Local 3193, individually and on behalf of
its members v. City of South Daytona)*

109.  Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 45 above.

110.  Defendants, through rule, policy, custom, order, or final decision, required and continue to require permission of a decision maker for Local 3193, and its members—who are firefighting personnel and city employees—to speak to elected officials as private citizens on matters of public concern.

111.  Defendants' decision maker has been empowered to determine whether Local 3193 members' and firefighters' speech should be granted permission to be communicated on the basis of its review of the content of the proposed communication(s).

112.  Plaintiff's speech depends on Defendants' affirmative approval of the proposed speech or communication.

113.  Approval of the proposed speech or communication is not a matter of routine, but involves appraisal of facts, the exercise of judgment, and the formation of an opinion.

114.  There is a bona fide, actual, and present need for a declaration that this policy, custom, order, and practice is an unlawful restraint on Local 3193 and its members' First and Fourteenth Amendment rights.

115. The declaration concerns a present, ascertained, or ascertainable state of facts or law applicable to the facts.

116. The rights of Local 3193 and its members are dependent on the facts and the law applicable to those facts.

117. Local 3193 and its members have an actual, present, adverse, and antagonistic interest in the subject matter, in both fact and law.

118. The antagonistic interests are before the court by proper process.

119. The relief sought is not merely to give legal advice or to answer questions propounded for curiosity.

120. Local 3193 and its members are entitled to a declaration that such rule, policy, custom, or order is an unlawful prior restraint on speech and association protected by the First and Fourteenth Amendments to the United States Constitution.

## **<u>PRAYER FOR RELIEF</u>**

Wherefore, Plaintiffs respectfully request that this Court:

A. Declare Defendants' rule, policy, custom, order, or final decision prohibiting Plaintiffs' First and Fourteenth Amendment right to free speech and free association unlawful.

B. Grant a permanent injunction enjoining Defendants, their officers,

agents, servants, employees, attorneys, and all persons in active concert or participation with Defendants from violating Plaintiffs' First and Fourteenth Amendment rights to free speech and to free association.

C.    Order Defendants to rescind the rule, policy, custom, order, or final decision that violates Plaintiffs' First and Fourteenth Amendment rights to free speech and free association.

D.    Order Defendants to make Julian Valiente whole by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful practices, including, but not limited to, reinstatement, elimination of any mention of Julian Valiente's unlawful termination in Defendant's files, and/or front pay.

E.    Order Defendants to make Julian Valiente whole by providing compensation for past and future pecuniary losses resulting from the unlawful practices described above, in amounts to be determined at trial.

F.    Order Defendants to pay Julian Valiente and Local 3193 punitive damages for Defendants' willful, malicious, and/or reckless conduct, as described above, in amounts to be determined at trial.

G.   Grant such further relief as the Court deems necessary and proper.

H.   Award Plaintiffs reasonable attorney's fees.

I.   Award Plaintiffs the costs of this action.

### JURY TRIAL DEMAND

Plaintiffs request a jury trial on all questions of fact raised by their complaint.

Respectfully submitted this day, 22nd day of May, 2026.

**COUNSEL FOR PLAINTIFF**

**/s/Nicholas Wolfmeyer**
Nicholas Wolfmeyer
Fl. Bar No. 127218
Mooney, Green, Saindon, Murphy & Welch, P.C.
Washington, DC 20006
Office: (202) 783-6078
Fax: (202) 783-6088
nwolfmeyer@mooneygreen.com